IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:11 CR 557 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER SUPPLEMENTING |
| -vs- | SENTENCING HEARING |
| Dylan R. Marshall, | JUDGE JACK ZOUHARY |
| Defendant. | |

**INTRODUCTION**

Child pornography remains one of the fastest growing areas of prosecution by the Justice Department. Law enforcement teams are policing the internet and catching people who have the false impression their habit is personal, harmless, and anonymous. Without a doubt, child pornographers deserve no sympathy -- they are serious offenders who capitalize on the vulnerability of innocent children, many of whom will have permanent emotional scars. However, these crimes, now appearing regularly on federal court dockets, raise a number of alarming issues, including the severity of punishment, which is often the result of harsh sentencing guidelines and mandatory minimum sentences usually reserved for violent felons and major drug dealers. Indeed, approximately 70% of the federal bench considers the current sentencing regime for child pornography possession and receipt cases too severe, and over 70% believe the mandatory minimum in receipt cases is too high. *See* U.S. Sentencing Comm'n, *Results of Survey of United States District Judges*, at 5 & 11 (2010), *available at:* http://www.ussc.gov/Research/Research_Projects/Surveys/0100608_Judge_Survey.pdf.

Excessive prison terms not only raise concerns regarding the expenditure of public monies and other resources, but they also compromise fundamental notions of fairness and justice. These issues become difficult as judges evaluate a defendant, with no criminal history and employed as a productive member of the community, against a truly disgusting habit where even passive viewing contributes to the mistreatment of children.

Numerous articles have discussed this dilemma. *See, e.g.*, Amir Erfati, *Making Punishment Fit the Most Offensive Crimes*, WALL ST. J., Oct. 23, 2008; Tracey Read, *Does the Punishment Fit the Crime for Child Porn?*, NEWS HERALD, Nov. 19, 2009; Mark Hansen, *A Reluctant Rebellion*, ABA J., June 2009. These articles come on the heels of reports from the Federal Justice Statistics Resource Center that demonstrate the dramatic increase in both child pornography prosecutions and sentencings. For instance, the number of child pornography offenders who received a prison sentence increased from 77% in 1997 to 97% in 2006. *See* Bureau of Justice Statistics, *Federal Prosecution of Child Sex Exploitation Offenders 2006*, at 5 (2007). The mean sentence for offenders convicted of possession, receipt, or distribution of child pornography has risen steadily from 20.59 months in 1997 to 91.82 months in 2008 -- an increase of nearly 450%. *See* Melissa Hamilton, *The Efficacy of Severe Child Pornography Sentencing: Empirical Validity or Political Rhetoric?*, STAN. L. & POL'Y REV. 545, 557 (2011) (citing Federal Justice Statistics Resource Center) ("Hamilton"). Moreover, the number of child pornography offenders (excluding production) being sentenced in federal court has consistently increased from 238 in 1997 to 1,645 in 2011. *Id.*; U.S. Sentencing Comm'n, *Sourcebook of Federal Sentencing Statistics*, tbl. 28 (2011).

These statistics also evidence the strong trend toward finding the Guidelines excessive for most child pornographer offenders. Of the 1,645 individuals sentenced for non-production child

2

pornography offenses in 2011, 1,081 -- or 66% -- received a below-Guidelines sentence. U.S. Sentencing Comm'n, *Sourcebook of Federal Sentencing Statistics*, tbl. 28 (2011). These "lesser sentences" are not only considerable in number, but also in magnitude. Some courts, for instance, imposed probationary sentences despite Guidelines ranges involving lengthy prison terms. *See, e.g.*, *United States v. Autery*, 555 F.3d 864, 867–68 (9th Cir. 2009) (affirming probationary sentence when Guidelines range was 41 to 51 months); *United States v. Rowan*, 530 F.3d 379, 380 (5th Cir. 2008) (affirming probationary sentence when Guidelines range was 46 to 57 months). Other courts, including some in this Circuit, have imposed sentences that are significantly below the bottom of the Guidelines range. *See, e.g.*, *Untied States v. Stall*, 581 F.3d 276 (6th Cir. 2009) (affirming one-day sentence despite range of 57 to 71 months Guidelines range); *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008). At least one judge has gone as far as holding the mandatory minimum unconstitutional as applied to a juvenile defendant. *See United States v. C.R.*, 792 F. Supp. 2d 343, 496 (E.D.N.Y. 2011) (holding five-year minimum term was "cruel and unusual punishment").

The high rate of variances from the Guidelines can be explained by the belief that tough sentences in these cases are punishing a defendant for something he or she has not yet done -- and may never do -- actual contact with children. Under the Guidelines, some of the recommended sentences for viewers can, with enhancements, be higher than those for actual predators. For instance, the Guidelines range for Defendant in this case is the same as the range for an adult who *actually* has sex with a child. *See United States v. Dorvee*, 616 F.3d 174, 187 (2d Cir. 2010). In effect, the Guidelines presume that those who view child pornography are indistinguishable from those who actually abuse children.

3

The founder of the John Hopkins Sexual Disorder Clinic notes that many of his patients have a voyeuristic interest in child pornography, but beyond viewing, they do not pose a higher risk of physically abusing a child. *See* Amir Erfati, *Making Punishment Fit the Most Offensive Crimes*, WALL ST. J., Oct. 23, 2008. This view is supported by the empirical literature, which generally concludes that there is little -- if any -- evidence of a direct correlation between viewing child pornography and the viewer's commission of "contact" sexual offenses. *See* Hamilton at 580–81 (citing various empirical studies). For instance, in one study, only 0.8% of the sample group consisting of individuals suspected of viewing online child pornography were actually investigated for child abuse during a six year follow-up period. *Id.* Similarly, in a London study, none of the internet child pornography offenders committed a contact sex offense in the follow-up period. In yet another study, offenders with only child pornography offenses in their criminal history were found to be the least likely to recidivate with a contact sexual offense. *Id.* Empirical data strongly suggests that viewing child porn does not equate to child molestation.

To complicate matters, the enhanced lengthy sentences for those convicted of child pornography come at a time when the federal prison population far exceeds the system's capacity. *See* Lanny Breuer & Jonathan Wroblewski, *Letter to the U.S.S.C. Chair*, 24 FED. SENT'G REP. 2, 137, 138 (2011) (reporting 50% crowding at high security facilities and 39% at medium security facilities). This level of crowding makes the delivery of programming aimed at reducing recidivism far more difficult. *Id.* Moreover, the increased sentences are occurring at a time when the average annual cost of incarceration for federal inmates, based on 2010 statistics, is $28,284 per inmate. Notice of Annual Determination of Average Cost of Incarceration, 76 Fed. Reg. 57081 (Sept.15, 2011). Many of these

4

offenders are then sent away to crowded prisons and receive little or no counseling, thereby aggravating the problem.

The specific question raised in the instant case is whether the mandatory minimum can be applied to this Defendant, who had the mental capacity of a minor both at the time the crime was committed and at the time of sentencing. A district court is not authorized to sentence a defendant below the statutory mandatory minimum unless the Government files a substantial assistance motion under 18 U.S.C. § 3553(e) and U.S.S.G. § 5K1.1, or a defendant falls within the safety valve of 18 U.S.C. § 3553(f). *See e.g.*, *United States v. Lively*, 390 F. App'x 210, 215 (4th Cir. 2010) (recognizing district courts have discretion to impose a non-guideline sentence below the statutory minimum in child pornography cases based on the Section 3553(a) factors when the Government makes a Section 3553(e) motion). However, the Section 3553(f) safety valve is inapplicable in child pornography cases, and Section 3553(e) motions are rare, given their dependence on the Government. *Lively*, 390 F. App'x at 214 ("[B]efore a district court [can] sentence below a statutory mandatory minimum, the government must specifically move [under Section 3553(e)] for such departure."). Indeed, in 2010, only 4.2% of child pornography offenders were relieved from the application of a mandatory minimum penalty because of substantial assistance. U.S. Sentencing Comm'n, *Mandatory Minimum Penalties*, fig. 10-5 (2011).

### **SENTENCING GUIDELINES AND SECTION 3553(A) FACTORS**

The challenge in this case, like all cases, is to determine a fair sentence that is sufficient, but not greater than necessary, to comply with the purposes Congress set forth in 18 U.S.C. § 3553(a). *See United States v. Grossman*, 513 F.3d 592, 595 (6th Cir. 2008). A sentence that is too lenient deprecates the seriousness of the crime and fails to promote respect for the law. However, at the other

extreme, a sentence that is too severe is unjust and also fails to promote respect for the law. After applying the Section 3553(a) factors, this Court must make an individualized assessment, based on the facts presented, as to what sentence Defendant should receive. *Id.* (citing *United States v. Gall*, 552 U.S. 38, 50 (2007)). Any sentence imposed should be reflective of what Defendant actually did.

This Court starts with the general agreement that crimes involving the possession, receipt and distribution of child pornography are serious. Congress correctly concluded that harm to young children depicted in child pornography has "a substantial and detrimental effect on society as a whole." Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587, Section 501(1)(A) (2006). In this case, however, Defendant was not involved in the actual production of child pornography and has not sexually abused a child. Further, he did not financially contribute to the production of child pornography because he did not pay for such materials.

Many defendants who access child pornography on their computer do not appreciate the magnitude of the crime being committed or the risk of capture. Indeed, computer technology has made this material readily available in the presumed privacy of one's home -- past impediments to obtaining such material no longer exist. Long gone are the days when a person had to travel to some shady bookstore. This material is now easily available, at no cost, with the click of a mouse cloaked in anonymity and secrecy.

Nevertheless, Congress holds the view that "every instance of viewing images of child pornography represents a renewed violation of the privacy of the victims and a repetition of their abuse." *Id.* at Section 501(2)(D). Therefore, even where distribution of child pornography is not for monetary gain or for recruiting children, it is an aggravating factor that courts must consider. Usually, the question presented in these cases is whether a sentence in excess of the mandatory minimum of

6

five years is justified. As previously discussed, a vast majority of federal judges consider the current sentencing regime for child pornography possession and receipt cases too severe, and also believe the mandatory minimum in receipt cases is too high. *See United States v. Grober*, 595 F. Supp. 2d 382, 398 (D.N.J. 2008) (noting that judges often vary downward in child pornography cases not because a given case is atypical, but rather because judges deem the base offense level too harsh). Further, statistics from the Northern District of Ohio reflect that of nearly 150 cases, approximately 40% of sentences are below the Guidelines. *See United States v. Szymanski*, 2009 WL 1212252, *2 (N.D. Ohio 2009).

Two factors in this case -- present in virtually every child pornography case -- operate as enhancements to increase Defendant's Guidelines range (151 months minimum) above the statutory mandatory minimum (60 months), even for a first-time offender: use of a computer (PSR ¶ 38) and number of depictions (PSR ¶ 39). These two enhancements, which are unsupported by empirical research, skew almost all child pornography receipt and possession cases upward and fail to provide meaningful separation of offenders. *See* Troy Stabenow, *A Method for Careful Study: A Proposal for Reforming the Child Pornography Guidelines*, 24 FED. SENT'G REP. 2, 122 (2011). For instance, when the computer-use enhancement was first introduced, only 28% of offenders used computers. Today, nearly 97% of offenders use a computer, and the enhancement is, for all intents and purposes, part-and-parcel of the offense. *Id.* As the Commission noted, the "adjustment does not distinguish between persons who email images to a single, voluntary recipient and those who [make child pornography widely accessible] and distribute [it] to large numbers of subscribers." *Id.* (citing U.S. Sentencing Comm'n, *Report to the Congress: Sex Offenses Against Children–Findings and Recommendations Regarding Federal Penalties* (1996)). In short, the enhancement fails to

7

distinguish defendants who are a threat to the community from those who are not, as the "empirical data does not show that using a computer . . . is a more serious or culpable offense than viewing the same images if they had been received by another medium such as through the mail." Stabenow at 122 (citing *United States v. Tapp*, 2010 WL 4386523, *6 (N.D. Ind. 2010)).

Likewise, the number-of-depictions enhancement is based on no study or evidence, and has no practical value for sorting offender culpability or danger. Stabenow at 123. A commentator recently summarized the flaws of this enhancement:

- The internet leads to the easy, and sometimes unintended, collection of massive collections of images, including those with violence and prepubescent children;

- with each short video clip counting as 75 images, 600 images is a shockingly low cap;

- perhaps for that reason, a majority of offenders receive the maximum enhancement for number of images, and almost all offenders receive some enhancement;

- those assessed fewer images may actually have accessed as many or more images, or they may not;

- individuals with fewer images may have had a much greater market effect, whereas those with 600-plus images may have had none;

- the number of images enhancement can effectively double a sentence;

- the actual effect of the enhancement is that sophisticated criminals, who will be more difficult to monitor going forward, tend to receive significantly smaller sentences than new offenders who have little experience with computers of the child pornography community;

- the focus on a simple yes-no test leads to cursory investigations in which participants in the system have no incentive to analyze the context of the images;

- there is no empirical evidence that the number of images reliably assess culpability or dangerousness; and

- the focus on the number of images has distracted everyone from exploring more reliable ways to differentiate offense conduct.

*Id.* at 125–26 (citations and quotations omitted).

These two problematic enhancements do not stand alone. The current Guidelines also seek to punish two types of image content, both applicable to the instant case. First, two levels were added for images involving prepubescent children (PSR ¶ 35), an enhancement that applies when the material involves a minor under the age of 12. Second, four levels were added for images portraying sadistic or masochistic conduct (PSR ¶ 37), an enhancement that applies even if the judge is certain that the offender had no intention of receiving or possessing such material. A single file typically triggers both enhancements. Stabenow at 126.

Of course, those who have a particularly intense focus on violent images involving sexual acts with young minors are more culpable and may prove to be at a heightened risk to re-offend than those who simply possess pictures of naked teens. Unfortunately, the current enhancements fails to identify and differentiate those with a penchant for deviant conduct from the less-culpable offenders. This is so because sadistic and masochistic conduct is defined broadly, and applies to any image that is likely to cause physical or emotional pain -- even if no evidence of such pain or cruelty exits. *Id.* (citing *United States v. Lyckman*, 235 F.3d 234, 238 (5th Cir. 2000)); *see also United States v. Corp*, 668 F.3d 379, 390 (6th Cir. 2012) (defining sadistic and masochistic conduct as "pictured activity [that] is inflicting physical pain, emotional suffering, or humiliation on [a] minor"). As a result, any picture depicting a young minor engaged in a sexual act with an adult will trigger both enhancements, as it is presumed that the sexual act will either hurt or cause emotional distress. Stabenow at 126 (citing cases). In fact, these enhancements, like the two previously discussed, apply to nearly every case -- 96% and 74% respectively. *Id.* at 127. As such, the separation of serious offenders is nominal.

For these reasons, the Guidelines do not deserve controlling weight in this case. *See Grober*, 595 F. Supp. 2d at 397 (finding many of the "offense characteristics" in Section 2G2.2 are "not genuine aggravating factors," but rather characteristics "inherent in just about any downloading offense" such that using them as enhancements is "irrational"). Instead, the more general sentencing factors set forth in Section 3553(a) trump the Guidelines.

### JUSTIFICATION OF DOWNWARD VARIANCE

There are a number of factors in this case which justify a downward variance from the Guidelines minimum of 151 months. Defendant's family characteristics (PSR ¶¶ 57–65); the lack of any reported history of complaints or crimes (PSR ¶¶ 49–55); no suspicion of similar offenses -- a search of records with the Fulton County Children Service found nothing (PSR ¶ 53); his history of victimization at a young age (PSR ¶¶ 80–81); his history of continued employment (PSR ¶ 89); support expressed by his clinical psychologist Dr. Gregory Forgac, as well as letters of support from various family members, and from Dr. Bradley Burns, who opines Defendant is "an early teenager mentally and physically" who "is struggling to find himself." In short, this Court is convinced that this Defendant poses no threat or danger to society -- a belief confirmed by Dr. Forgac, who concluded Defendant does not present "a significant risk to any specific individual" (Doc. 12-1 at 9).

Defendant's immediate and continuing cooperation after his arrest also support his genuine remorse. This is a young man who has shown by his prior conduct that he is not in need of incarceration to prevent him from engaging in criminal conduct. But for this offense, his life has been wholly law abiding. An individual with a low risk of recidivism does not need a lengthy incarceration for the protection of the public. This point is underscored in this case where Defendant cooperated fully with authorities, would likely be considered for continued employment even with the guilty plea to this offense, and his treatment providers found him to pose no threat to the public whatsoever.

The mandatory minimum of five years is not a proverbial "slap on the wrist," especially for someone who has never spent a day in jail and with no history of violence or assaultive conduct, who suffers from a human growth hormone deficiency and other developmental conditions, and who voluntarily provided much of the evidence used to prosecute him. Defendant will also have the life altering consequences of probation and reporting that naturally flow from a conviction for this sex offense. When this Court weighs these individual considerations, the Guidelines produce a sentence range that is not reflective of the crime. Therefore, it is appropriate, in the exercise of discretion, to impose a downward variance.

In *United States v. Grossman*, the Sixth Circuit affirmed a substantial downward variance for reasons similar to those found in the instant case. 513 F.3d 592 (6th Cir. 2008); *see also United States v. Beach*, 275 F. App'x 529, 532-35 (6th Cir. 2008) (affirming district court's sentence of 96 months for defendant convicted of transporting and receiving child pornography where applicable Guidelines range was 210–240 months). Here, like *Grossman*, the Guidelines produce a calculation that is both unfair and unreasonable and in direct conflict with the "sufficient, but not greater than necessary" mandate of Section 3553(a).

### How Low Can This Court Go?

Defendant argues for a sentence below the mandatory minimum set forth in 18 U.S.C. § 2252(b)(1) (Doc. 21). As previously discussed, five years is the mandatory minimum for every defendant convicted of receiving child pornography, regardless of the Section 3553(a) sentencing factors. While Defendant does not raise specific constitutional arguments against the application of the mandatory minimum in this case, this Court is sympathetic to the arguments made by the defendant in *United States v. C.R.*, 792 F. Supp. 2d 343, 496 (E.D.N.Y. 2011). As articulated during Defendant's sentencing hearing, as well as with counsel prior to the hearing, this Court believes such

11

arguments are applicable in this case with equal force. Specifically, this Court is persuaded that the Section 2252 mandatory minimum is inconsistent with the Section 3553 sentencing factors, and further believes that the mandatory minimum, as applied to this Defendant, might well be unconstitutional. The parties, however, did not brief those arguments, despite being afforded the opportunity to do so. While these arguments are now best reserved for consideration on appeal, this Court will briefly address why they are persuasive in the case at hand.

### Section 2252 is Inconsistent with Section 3553 as Interpreted by *Booker*

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the Sentencing Guidelines are advisory, not mandatory, and that district courts have discretion in fashioning a sentence under Section 3553(a). The later cases of *Rita v. United States*, 551 U.S. 338 (2007), *Gall v. United States*, 552 U.S. 38 (2007), and *Kimbrough v. United States*, 552 U.S. 85 (2007), as well as numerous Sixth Circuit decisions, confirm that district courts have flexibility and discretion to fashion an appropriate sentence based on the individual facts of a given case.

In this case, however, the mandatory minimum sentencing scheme of Section 2252(b) is in direct conflict with this Court's mandate under Section 3553(a) to fashion an appropriate sentence. The Sixth Circuit has not yet evaluated the potential conflict between mandatory minimum sentences and the factors under Section 3553(a) through the lens of *Booker* and its progeny. This conflict is especially problematic in cases such as this one, where this Court finds that the mandatory minimum exceeds a fair and just sentence that is sufficient, but not greater than necessary, to comply with Section 3553(a). As Justice Breyer aptly wrote:

> Mandatory minimum sentences are fundamentally inconsistent with Congress' simultaneous effort to create a fair, honest, and rational sentencing system through the use of Sentencing Guidelines. Unlike Guideline sentences, statutory mandatory minimums generally deny the judge the legal power to depart downward, no matter how unusual the special circumstances that call for leniency. They rarely reflect an

12

> effort to achieve sentencing proportionality—a key element of sentencing fairness that demands that the law punish a drug "kingpin" and a "mule" differently. They transfer sentencing power to prosecutors, who can determine sentences through the charges they decide to bring, and who thereby have reintroduced much of the sentencing disparity that Congress created Guidelines to eliminate.

*Harris v. United States*, 536 U.S. 545, 570–71 (2002) (Breyer, J., concurring in part and in the judgment).

The mandatory minimum as applied in this case handcuffs this Court in considering the relevant factors necessary for imposing a just sentence. The mandatory minimum resists the direction of *Gall* -- namely, that sentencing options are "significantly broadened" as dictated by the facts of the case and requiring an "individualized assessment" of the defendant, rejecting mathematical proof for a more flexible exercise in judgment. As a consequence, the mandatory minimum directly conflicts with the goal of unwarranted sentencing disparities.

The problem is especially apparent where the differences between the receipt of child pornography and the possession of child pornography are distinctions without a difference. Yet one carries a mandatory minimum of five years while the other has none. Conduct which could apply to either violation necessarily results in the potential for gross disparities in sentences -- a fact the Sixth Circuit has previously recognized. *See United States v. Robinson*, 669 F.3d 767, 776 n.2 (6th Cir. 2012) ("We note that standing alone, the current statutory scheme makes no principled distinction between possessing and receiving child pornography, which can often times be virtually identical conduct, but nonetheless results in vastly different mandatory sentencing ranges."); *see also United States v. Farrelly*, 389 F.3d 649, 657 (6th Cir. 2004) (recognizing that "every possession necessarily involves a receipt"); *United States v. Miller*, 527 F.3d 54, 73 (3d Cir. 2008) (possession is a lesser-included offense of receiving child pornography); *United States v. Davenport*, 519 F.3d 940, 943–44 (9th Cir. 2008) (conviction for receipt and possession of child pornography constitutes double

jeopardy); *United States v. Romm*, 455 F.3d 990, 998 (9th Cir. 2006); *United States v. Perez*, 247 F. Supp. 2d 459, 484 n.12 (S.D.N.Y. 2003).

This tension between possession and receipt effectively places in the prosecutor the ability to determine the defendant's sentence, a role reserved for the judiciary. In short, a prosecutor through a charging decision controls the sentencing range in cases involving the possession and/or receipt of child pornography. The concern that a mandatory minimum shifts too much power from the judiciary to the executive was expressed by Justice Kennedy:

> Under the federal mandatory minimum statutes a sentence can be mitigated by a prosecutorial decision not to charge certain counts. There is debate about this, but in my view, a transfer of sentencing discretion from a judge to an Assistant U.S. Attorney . . . is misguided. Often these attorneys try in good faith to be fair in the exercise of discretion. The policy, nonetheless, gives the decision to an assistant prosecutor not trained in the exercise of discretion and takes discretion from the trial judge. The trial judge is the one actor in the system most experienced with exercising discretion in a transparent, open, and reasoned way. Most of the sentencing discretion should be with the judge, not the prosecutors.

Anthony M. Kennedy, Address at the American Bar Association Annual Meeting (Aug. 9, 2003). This Court believes the Sixth Circuit should determine, at least in this context, whether mandatory minimum sentences violate the separation of powers in light of *Booker* and its progeny.

**Section 2252 May Be Unconstitutional As Applied to Defendant**

In both the Presentence Investigation Report and during the sentencing hearing, uncontroverted evidence was introduced regarding Defendant's physical condition, as well as his mental and emotional health. In 2005, Defendant was diagnosed with human growth hormone deficiency, a condition that required daily hormone injections for a period of over five years (Doc. 14 at 11). Shortly after his arrest, Defendant underwent a mental health assessment prepared by Maralyn Logsdon, a licensed clinical supervisor, who diagnosed Defendant with a dysthymic disorder and a personality disorder (Doc. 14 at 11–12). According to Logsdon, Defendant is "an individual

with multiple psychological problems," and a "person with long-standing feelings of insecurity, inadequacy, and inferiority" (Doc. 14 at 12).

In February 2012, Dr. Forgac, a clinical psychologist, conducted a psychological evaluation of Defendant, finding Defendant suffers from "anxiety, depression, negativity, social and emotional alienation, withdrawal and isolation" (Doc. 12-1 at 8). Dr. Forgac also administered the Ammons Quick Test, a test that measures verbal intelligence and produces an estimated IQ score. Defendant received an IQ score of 87 and an estimated mental age of 15.5 years (Doc. 12-1 at 8).

At the sentencing hearing, Dr. Forgac emphasized that Defendant's mental age of 15.5 years was consistent with his personal interviews with Defendant, the data he reviewed in this case, and Defendant's overall psychological evaluation. Dr. Forgac further testified that the effect of Defendant's human growth hormone deficiency, combined with his developmental conditions, played a significant factor in this case. Specifically, Dr. Forgac opined that "in all ways other than chronological age, [Defendant] was still a juvenile at the time of his arrest" (Doc. 12-1 at 9). This opinion is shared by Logsdon and Dr. Burns, who agree with Dr. Forgac that Defendant is a fairly young teenager in terms of maturity. In concluding his testimony, Dr. Forgac reiterated this belief that, in his expert opinion, Defendant is, for all intents and purposes, "a kid."

Testimony and other evidence at Defendant's sentencing hearing supports the conclusion that at the time of the crime Defendant was, and should be characterized for sentencing as, a developmentally immature teenager lacking the ability to appreciate the illegality of child pornography and to control his viewing of easily accessible internet content. As the Supreme Court recognized, "our society views juveniles . . . as categorically less culpable than the average criminal." *Roper v. Simmons*, 543 U.S. 551, 567 (2005) (quotations omitted). "Juveniles are more capable of change than are adults, and their actions are less likely to be evidence of 'irretrievably depraved

15

character' than are the actions of adults." *Graham v. Florida*, --- U.S. --- , 130 S. Ct. 2011, (2010) (citing *Roper*, 543 U.S. at 570). For that reason, certain sentences are cruel and unusual -- and therefore unconstitutional -- when applied to juveniles. *See, e.g.*, *Roper*, 543 U.S. at 570 (ruling execution of juvenile offenders unconstitutional); *Graham*, 130 S. Ct. at 2011 (ruling life imprisonment without parole for juvenile offenders in non-homicide cases unconstitutional); *Miller v. Alabama*, No. 10-9646, slip op. (Sup. Ct. June 25, 2012) (ruling mandatory life imprisonment without parole for juvenile homicide offenders unconstitutional); *see also Atkins v. Virginia*, 536 U.S. 304 (2002) (holding executing mentally retarded individuals violates the Constitution). While a five-year mandatory prison term may be less cruel than life in prison, as applied in cases like this one, it may well constitute "cruel and unusual punishment." At least one court has held as much. *See United States v. C.R.*, 792 F. Supp. 2d 343, 496 (E.D.N.Y. 2011) (appeal pending).

While recognizing that a sentence is not "cruel and unusual" under the Eighth Amendment "simply because it is mandatory," *United States v. Wimbley*, 553 F.3d 455, 463 (6th Cir. 2009) (citing *Harmelin v. Michigan*, 501 U.S. 957, 994–95 (1991)), the Supreme Court opened the door for analyzing a term-of-years sentence under a proportionality standard. *C.R.*, 792 F. Supp. 2d. at 507 (citing *Graham*, 130 S. Ct. at 2022–25). The *C.R.* court recognized the Supreme Court's directive to consider the differences between adolescents and adults in terms of culpability, ultimately finding that the five-year mandatory minimum, as applied to the defendant, would be "cruel and unusual." *Id.* at 509–10. According to the court, the mandatory minimum would serve no legitimate penological goal, and subjecting defendant to "five-years of incarceration, most of it without effective treatment, would constitute a violation of the Constitution." *Id.*

This Court is convinced that the logic of *United States v. C.R.* applies equally to this case. Defendant is amenable to treatment, and sending him to a federal prison for five years would serve

16

no legitimate penological goal. Indeed, Defendant has willingly participated in psychological evaluations, and is currently undergoing weekly counseling sessions with Logsdon (Doc. 14 at 12). Treatment is necessary for Defendant to mature into a responsible, law-abiding individual -- imposition of excessive prison time will only destroy an opportunity for Defendant to live a constructive life. *C.R.*, 792 F. Supp. 2d. at 511 (citing David Gray, *Punishment as Suffering*, 63 VAND. L. REV. 1619, 1692–93 (2010)). As Dr. Forgac testified, rehabilitation for Defendant requires the least restrictive environment and the continuation of constructive activities, such as employment.

For all the above reasons, this Court believes 60 months is excessive, unjust, and greater than necessary as applied to this Defendant (and may well be cruel and unusual).

## CONCLUSION

Despite the compelling argument that the mandatory minimum sentence impermissibly infringes on this Court's mandate to fashion an adequate sentence under Section 3553(a), as well as the argument that subjecting an individual to a mandatory minimum under the circumstances in this case may be unconstitutional, this Court finds it is not presently in a position to make such declarations. Case law in this Circuit and elsewhere is silent on these issues. Therefore, this Court arrives at a frustrating conclusion: it is statutorily bound to impose a sentence of 60 months, and does so, while at the same time emphasizing its strong disagreement.

IT IS SO ORDERED.

                                                    s/ *Jack Zouhary*
                                                JACK ZOUHARY
                                                U. S. DISTRICT JUDGE

June 29, 2012